# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5971 | **DATE** | 12/13/2004 |
| **CASE TITLE** | Erica Allen vs. ATG Credit LLC | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Motion of ATG Credit for Summary Judgment [#17] is hereby **denied.** Status hearing is set for **1/12/05 at 9:00 a.m.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | | **33** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | DEC 14 2004 date docketed | | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 12/13/2004 | | |
| FT/*aley* | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | FT mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERICA ALLEN,                    )
                                )
        Plaintiff,              )
                                )
vs.                             )       No. 03 C 5971
                                )
ATG CREDIT LLC.,                )       Magistrate Judge Arlander Keys
                                )
        Defendant.              )

DOCKETED
DEC 14 2004

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant ATG Credit LLC.'s ("ATG") Motion for Summary Judgment. Plaintiff, Erica Allen, sued ATG for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq (West 2004). For the reasons set for the below, ATG's Motion is denied.

## Background Facts

In 1997, Ms. Allen registered for classes at Columbia College. A few weeks later, Ms. Allen withdrew from her classes, due to financial difficulties, with the understanding that she would not be responsible for tuition or other fees.

Almost six years later, on July 8, 2003, Ms. Allen received a phone call from ATG regarding money supposedly owed to Columbia College. Ms. Allen denied owing Columbia College any money. Ms. Allen claims that, two days later, she received two undated letters from ATG regarding the alleged debt. Although neither letter is dated, both envelopes bore a July 8, 2003 postmark – the same day

33

Ms. Allen first spoke with the ATG representative on the phone.

The first letter (the "validation letter") stated that Ms. Allen's debt to Columbia College[1] was seriously past due, but explained that Ms. Allen could challenge the validity of the debt within 30 days after receipt of the notice. The validation letter also described Ms. Allen's right to obtain verification of the debt, as well as the creditor's name and address. The second letter (the "follow-up letter") reminded Plaintiff of her "arrangements with our organization," stating that it was "imperative that you remain timely in making the above payment. Failure to comply with the arrangements set can result in action up to and including full involuntary resolution of your defaulted account." This follow-up letter did not identify a creditor, but lists the "Payment Amount" as $2,754.15, with a "Date Due" of July 9, 2003.

On July 22, 2003, Ms. Allen sent ATG a letter requesting verification and documentation relating to the alleged debt. Ms. Allen further requested that any of ATG's future attempts to contact her be made via mail, not telephone.[2] ATG responded to Ms.

---

[1]  ATG claimed that Ms. Allen owed Columbia College $2,754.15.

[2]  Nevertheless, ATG placed five phone calls to Ms. Allen's residence after July 28, 2003. Apparently, Ms. Allen did not receive the calls and ATG did not leave a message. ATG claims that it called Ms. Allen only to confirm that Ms. Allen received the requested verification.

Allen's request by providing a list of the charges that were allegedly owing to Columbia College.

There were no further communications between Ms. Allen and ATG. Ms. Allen filed suit against ATG on August 25, 2003, and this case was initially assigned to Judge Robert. W. Gettlemen. On April 8, 2004, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Pursuant to Local Rule 73.1, this case was reassigned from United States District Court Judge Robert W. Gettleman to this Court.

**Discussion**

In her Complaint, Ms. Allen argues that, because she received both the validation letter and the follow-up letter, ATG violated the FDCPA. Ms. Allen claims that, read together, the two letters were unclear as to whether the 30 day period had expired. In addition, Ms. Allen claims that ATG failed to properly verify her debt, and otherwise engaged in harassing and deceptive practices.

ATG claims that the evidence proves that it sent Ms. Allen the validation letter on June 10, 2003- a full month before she received a second copy of the validation letter as well as the follow-up letter. Because it had sent the validation letter long before the follow-up letter, ATG argues, Ms. Allen's claims of confusion and deception are without merit. In addition, ATG argues that it verified Ms. Allen's debt in the manner requested. Before

3

addressing these contentions, the Court sets forth the standards that guide its analysis.

## Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact . . . and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The governing substantive law establishes which facts are material. *Anderson*, 477 U.S. at 248.

The non-moving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). Additionally, "mere conclusory" allegations are not enough. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party will not survive summary judgment if it cannot present sufficient evidence to support each element of its case on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Courts do not make "credibility determinations nor choose

between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Further, the court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

## The FDCPA

Congress enacted the FDCPA, in part, "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e) (West 2004). The FDCPA prohibits debt collectors from: 1) employing unfair or unconscionable collection methods; 2) harassing, oppressing, or abusing any debtor; and 3) making false, misleading, or deceptive statements in its attempt to collect a debt. 15 U.S.C. § 1692(d-f) (West 2004).

In determining whether a debt collector has violated the FDCPA, the Court adopts the perspective of the "unsophisticated consumer." *Gammon v. GC Serv. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994). This standard accomodates the need to protect "uninformed, naive or trusting" consumers, while maintaining "an objective element of reasonableness" that "shields complying debt collectors from liability for unrealistic or peculiar interpretations of collections letters. *Id.*

As a safeguard to consumers, the FDCPA requires debt collectors to inform debtors of their right to validation and verification of the debt. The validation notice must inform the consumer that, if he notifies the debt collector in writing that the debt, or any

5

portion of it, is disputed, the debt collector must obtain verification of the debt and send it to the consumer. 15 U.S.C. § 1692g(a)(4). The debt collector may not present the required information in an obscure or confusing manner. Even if all the required information required by the FDCPA is contained in the validation notice, the debt collector may nevertheless violate the Act if the notice is overshadowed or contradicted by accompanying messages. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir.1997).

Language in communications sent after the initial collection letter may also violate the FDCPA's validation notice requirement, if the communication obscures or overshadows the prior notice. *Robinson v. Transworld Systems, Inc.*, 876 F. Supp. 385, 391 (N.D.N.Y. 1995). Courts have concluded that a follow-up letter (which demands immediate payment) sent within days of an initial collection letter (which sets forth the validation notice) could confuse an unsophisticated consumer about her right to validate and verify the debt under the FDCPA.

For example, in *Booth v. Collection Experts, Inc.*, 969 F. Supp. 1161, 1166 (E.D. Wi. 1997), a collection agency sent a consumer a proper validation notice; five days later the agency sent the consumer a follow-up letter demanding full payment within five days. The court determined that, by demanding payment in only five days, the follow up letter would confuse the unsophisticated

6

consumer as to whether he had five or twenty-five days to dispute the debt. *Id; see also, Barrientos v. Nichter*, 76 F.2d 510 (S.D.N.Y. 1999) (a follow-up letter sent shortly after a validation notice was confusing and violated the FDCPA).

In the instant case, Ms. Allen received the follow-up letter -- explaining that the debt had a "Due Date" of July 9, 2003 and informing Ms. Allen that it was "imperative that you remain timely in making the above payment. Failure to comply with the arrangement set can result in action up to and including full involuntary resolution of your defaulted account." - on the same day that she received her validation letter, explaining that she had 30 days to decide whether or not to contest the debt. The Court finds that an unsophisticated consumer could be confused as to whether she had to pay the debt immediately or whether she had 30 days to challenge the debt.

ATG does not argue that, when read together, the two letters could confuse an unsophisticated consumer and (presumably) violate the FDCPA. Instead, ATG argues that the uncontradicted evidence shows that it sent the initial validation letter to Ms. Allen on June 10, 2003 -- one month before Ms. Allen received the follow-up letter and a *second copy* of the validation letter. This "uncontradicted evidence" consists of a piece of paper purporting to be a log of ATG's activities in connection with attempting to collect Ms. Allen's debt, and lists June 10, 2003 as the date that

ATG sent the initial notice. The Court finds that this evidence is insufficient to defeat Ms. Allen's claim.

The FDCPA requires that the validation notice inform consumers that they can contest a debt within 30 days of receiving the collection letter – not within 30 days of the date the debt collector mailed the letter. In this case, Ms. Allen has submitted an affidavit that she never received the first validation notice. This evidence is sufficient to create a genuine issue of material fact as to when the validation period began to run. Therefore, ATG's Motion for Summary Judgment is denied.

Next, ATG claims that Ms. Allen has failed to submit sufficient evidence of actual damages. ATG's argument is inappropriate for a summary judgment motion, however, as the FDCPA does not require a consumer to show actual damages to pursue a lawsuit. *Bartlett v. Heibl*, 128 F. 3d 497, 499 (7th Cir. 1997). Courts look to the debt collector's actions, not the consumer's actual damages, in determining whether the FDCPA has been violated. *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1997).

Finally, ATG argues that Ms. Allen's claims with regard to the verification notice must fail, because it complied with Ms. Allen's request to verify her debt and ceased all collection activities. Initially, the Court notes that ATG's own evidence belies its claim that it ceased with its collection activities once it received Ms. Allen's request for verification. ATG's business records show that

8

it telephoned Ms. Allen approximately five times after the verification request. While ATG claims that it only attempted to contact Ms. Allen to verify that she had received the information she requested, the Court finds that the jury is in the better position to decipher ATG's motivations.

However, the Court agrees that Ms. Allen was not entitled to receive the initial creditor's name and address (although the validation letter and the subsequent verification letter do identify Columbia College) because Ms. Allen did not specifically request this information. The FDCPA provides that:

> if the consumer notifies the debt collector in writing within the thirty day period described in subsection (a) that the debt . . . is disputed, *or that the consumer requests the name and addresss of the original creditor,*
> the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment,
> *or the name and address of the original creditor,* and a copy of such judgment, *or name and address of the original creditor,* is mailed to the consumer by the debt collector.

15 U.S.C.§ 1692g(b) (West 2004). Therefore, the Court cannot conclude that ATG's verification was defective in this regard. However, this is not (as ATG contends) the only challenge that Ms. Allen levels against ATG's verification attempts. Ms. Allen also claims that ATG's limited response – which merely listed the courses for which Ms. Allen registered and the corresponding fees – was insufficient, because it failed to account for Ms. Allen's (allegedly) timely withdraw from the classes listed. ATG utterly fails to address this aspect of Ms. Allen's claim.

## Conclusion

For the reasons set forth above, the Court finds that there is a genuine issue of material fact as to whether Ms. Allen first received ATG's validation letter (explaining that she had 30 days to contest the debt) and the follow-up letter (noting that the debt was due and otherwise requesting immediate payment) on the same day. Because receipt of the two letters on the same day could confuse an unsophisticated consumer, in violation of the FDCPA, the Court denies ATG's Motion for Summary Judgment.

Dated: *December* 13, 2004     E N T E R :

ARLANDER KEYS
United States Magistrate Judge